This is a tax case.
George Rush was a general contractor who constructed two plants for the treatment of water to be placed in municipal water systems. He claimed that these two plants were tax exempt because they removed pollution from water. The Department of Revenue (hereinafter Department) disallowed these exemptions and assessed sales and use taxes against Rush.
Rush appealed these final assessments of tax to the Circuit Court of Calhoun County. He demanded a trial by jury, but the Department moved to strike this demand. The Department's motion was granted, and the case was heard by the court sitting without a jury. On April 20, 1981 a final judgment was entered in favor of the Department.
A motion for new trial was filed by Rush on May 20, 1981. On July 29, 1981 the trial court amended its final judgment. On September 8, 1981 Rush appealed to this court.
The major issue in this appeal is whether the trial court erred in finding that these water plants were not exempt from taxation under §§ 40-23-4 (16) and 40-23-62 (18), Code 1975. Further, Rush raises the issue of whether he is entitled to a jury trial in a tax case.
In addressing the jury trial issue, we find that there is no right to trial by jury in a tax case. Our courts have held that since there was no right to jury trial in tax assessment cases when our constitution was adopted, the right to a jury trial never operated in such a proceeding except as provided by statute. State v. Overby, 265 Ala. 39, 89 So.2d 525 (1956). There is no statutory provision allowing for a jury trial in these cases. As a result, the trial court did not err in striking the jury demand.
The major issues in this appeal concern the correct interpretation of exemptions from sales and use taxes provided by §§ 40-23-4 (16) and 40-23-62 (18), Code 1975. Section40-23-4 (16) provides the following exemption from sales tax:
 (16) The gross proceeds from the sale of all devices or facilities, and all identifiable components thereof or materials for use therein, acquired primarily for the control, reduction or elimination of air or water pollution and the gross proceeds from the sale of all identifiable components of or materials used or intended for use in structures built primarily for the control, reduction or elimination of air and water pollution. [Emphasis supplied.]
Section 40-23-62 (18) provides the following exemption from use tax:
 (18) The storage, use or consumption of all devices or facilities, and all identifiable components thereof or materials for use therein, used or placed in operation primarily for the control, reduction or elimination of air or water pollution, and the storage, use or consumption of all identifiable components of or materials used or intended for use in structures built primarily for the control, reduction or elimination of air or water pollution.
[Emphasis added.]
Rush contends that the term "pollution" as used in these statutes would include plants such as his which make water potable. However, the Department contends that the exemption is applicable only to *Page 1025 
facilities designed to remove human or industrial waste from water prior to its being discharged back into the environment.
In its final judgment the trial court found that the facilities in question processed raw, unpotable water into safe drinking water for human consumption and that pollutants were removed from the water. The court then held that § 40-23-4
(16), Code 1975, was intended to apply solely to facilities designed for the removal of human or industrial waste from water before it was returned to the environment, and not to those designed and operated as water treatment plants.
Courts can only learn what the legislature intended by what it has said and where language of a statute is unambiguous the clearly expressed intent must be given effect. Drake v.Pennsylvania Threshermen Farmers Mutual Casualty InsuranceCo., 265 Ala. 444, 92 So.2d 11 (1957). In determining legislative intent, courts will give words and phrases the same meaning they have in everyday usage. Fuller v. AssociatesCommercial Corp., 389 So.2d 506 (Ala. 1980). In the absence of statutory definition, the commonly accepted definition of a word must be applied. State v. Wallis, 48 Ala. App. 652,267 So.2d 172 (1972).
The pertinent language in the code sections in question is "structures built primarily for the control, reduction or elimination of air or water pollution." Inasmuch as we do not find this language ambiguous, we must give the words, particularly the word "pollution," their common, everyday meaning since the legislature failed to define them. The term "pollute" is defined as "to make physically impure or unclean." Webster's Seventh New Collegiate Dictionary (1976). Thus, pollution would include any impurity.
Rush argues that the plants in this case are designed to eliminate all types of impurities from water in order to make it potable, and, since these facilities remove pollution from water, they are not taxable. The Department, however, contends that the statute is intended to apply only to the removal of pollutants from the water by industries before the water is returned to the environment.
The Department relies on a Tennessee case, King ConstructionCo. v. Tollett, 599 S.W.2d 797 (Tenn. 1980). In that case the Tennessee court held that water distribution plants were not exempt from taxation. We note, however, that the Tennessee statute is completely different from Alabama's in that it limits its application to stream pollution control and sewage systems. Therefore, the Tennessee statute specifically excludes water treatment plants from an exemption.
The meaning of the word "pollution" as used in the Alabama statutes is not limited just to industrial or man-made waste, it includes any impurity. In the present case the plants in question removed all types of impurities from the water. The wording of the statute is clear on its face, and this court must apply the plain meaning of the statute. See AlabamaIndustrial Bank v. State ex rel. Avinger, 286 Ala. 59,237 So.2d 108 (1970).
The Alabama legislature has not seen fit to limit the application of the exemption in question; therefore, we cannot find that the statute limits its application to only industrial pollution or impurities being returned to the environment. We hold, therefore, that the statute does allow an exemption for the type of plants involved in the present case. As a result, the judgment below is reversed and the case remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur. *Page 1026