BEATTY, Justice.
This is an appeal from a judgment of the Circuit Court of Calhoun County which upheld the suspension of the plaintiff from his position. We affirm.
The plaintiff, Robert M. Searcy, was business manager of Ayers State Technical College until his suspension from that position by its president, Pierce M. Cain. The events leading up to that suspension began on March 1, 1974, when Searcy informed Cain that Searcy knew of some financial irregularities, including work orders and scrap metal money that had not been properly processed. Following this conversation Cain addressed a memorandum to Searcy requesting him to report any knowledge of “any act, transaction, or claim by anyone at this institution that you consider illegal, fraudulent, or an act of embezzlement” made by anyone, including Cain. This memo was delivered to Searcy by Cain personally, with the verbal instruction to respond by March 4 at 4:00 P.M. When this memo went unanswered, Cain sent Searcy another, directing a response by March 8 at 4:00 P.M. On that date Cain read Searcy still another memo in which Cain stated that Searcy would be considered insubordinate and uncooperative if the memo of *349 March 1 were not complied with. This March 8 memo also allowed an extension of time to March 18 for compliance if Searcy had not sought legal counsel, and invited any retained counsel to suggest another compliance date. At the time this March 8 memo was read to Searcy, Cain had an unopened letter he had received from Sear-cy in which Searcy had stated that he had the Attorney General for counsel. But Se-arcy neither requested an extension nor otherwise indicated that he had an attorney.
However, on March 13 Cain received a letter from a firm of lawyers retained by Searcy, this letter reciting:
The only answer Mr. Searcy can give to your question is that he had no knowledge of any illegal or fraudulent acts, nor does he have any knowledge of any acts of embezzlement in connection with the operation of the business office of the Institution.
On March 14, Cain informed Searcy by letter that he was indefinitely suspended for insubordination and lack of cooperation arising from his failure to reply. This letter set out the grievance procedure to be followed should Searcy request a hearing.
A hearing was held before the school’s grievance committee on April 10. Mr. Se-arcy and his counsel were both present. Those proceedings were recorded. Searcy’s counsel cross-examined the school’s witnesses and he himself testified. Upon the conclusion of that hearing the committee upheld the suspension. That decision was appealed to an ad hoc committee which held another hearing on July 22. At that recorded hearing Searcy and his counsel were present. Searcy himself testified he produced other witnesses in his behalf, and witnesses adverse to him were cross-examined. The ad hoc committee sustained the suspension and recommended that the State Board of Education act upon it. The agenda of the meeting of the State Board for August 20 contained that recommendation. Searcy's lawyer was invited to attend that meeting and make an oral presentation. When the Board met on that date it approved a resolution upholding the decision of the ad hoc committee sustaining Searcy’s suspension.
Searcy followed that decision by filing a complaint in circuit court to have his suspension declared void, seeking restoration and back pay. After a de novo hearing ore tenus, his suspension was upheld once again. When his motion for a new trial was denied, Searcy appealed here, alleging violation of his First Amendment rights, a lack of due process, and the lack of evidence to support the judgment of the trial court.
In its judgment the trial court found that the response required of Searcy, still unanswered, was not unreasonable, and that no violation of his First Amendment rights had occurred. The trial court had before it not only the testimony taken in open court, but also requests for admissions of facts and Searcy’s answers to those requests, certified copies of the minutes of the State Board of Education meetings of April 16, 1971, July 18, 1973, and September 26, 1973, covering the grievance hearing at the Institution and the hearing before the State Board’s ad hoc committee.
Searcy’s claim of a lack of procedural due process because of Dr. Austin’s presence on the school’s grievance committee was unproved. The facts fail to disclose any untoward relationship between Austin, Ayers States’ Dean of Instruction, and Cain, or any bias or prejudice entertained against Searcy by Austin. In any case, Searcy did not object to Austin’s chairmanship of that committee or to his participation in its deliberations until the conclusion of the hearing. Under those circumstances any such objection, even if proper, was effectively waived.
Without engaging in a detailed account of the evidence, we may state that the record, which contains the testimony given at those proceedings, together with the exhibits (the letters referred to earlier), clearly discloses an adherence at all levels by the school authorities to the requirements of due process of law. At all times, Searcy has had sufficient notice of the *350 charges and a full opportunity to present evidence and confront the witnesses against him. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971). Under the tendencies of that evidence the trial court could have found that Searcy had made statements of irregularities in the management of the school’s finances, involving Cain and others connected with the school, statements which reasonably could have been detrimental to the Institution and adverse to the morals of its faculty. To impose a sanction against such conduct is not prohibited by the First Amendment. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Searcy did not deny making the statements; the gist of his defense throughout has been either that he did comply with Cain’s request to the best of his ability, or that he did not know how to respond. Under the evidence, however, we believe the trial court could have found that Searcy had a reasonable opportunity to fully respond and that his answers, when made, were incomplete or evasive, even when he resorted to a vicarious reply by his then attorney. Thus there was no denial of pure speech or comment. A school official’s interest as a citizen in making comment must be balanced against the State’s interest in promoting the efficiency of its employees’ public services, and such statements which present questions of faculty harmony and efficient operation afford a proper basis for disciplinary sanction. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967). Indeed, Searcy’s employment relationship with Cain involved the closest working relationship for which personal loyalty and confidence were necessary for the proper functioning of the school. Thus the tacit accusations reflected more than a mere difference of opinion between the two or comment on a matter of public concern. Pickering, supra.
We conclude that there was substantial evidence upon which the trial court could have upheld the suspension. And when the trial court’s findings are based upon evidence taken ore tenus, they are presumed valid, a presumption which may be disturbed only when those findings are manifestly erroneous. Jones v. Ball, 294 Ala. 654, 320 So.2d 665 (1975). Accordingly, the judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.